IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARLI FAWCETT, NATALIE BRANCH,
CARRIE MOORE, ELSPETH KATHRINE
ELIZABETH CHARNO, MIRANDA
MARTIN, LAURA POLKINGHORN,
KYRA FARR, ANNIE JOLLIFF,
CLARA SIMS, ALLISON DAVIES, JULIA
DI SIMONE, and HANNAH PUCKETT,

       Plaintiffs,

     v.

WILLAMETTE UNIVERSITY,

       Defendant.

Case No.: 6:16-cv-01594-MC

OPINION AND ORDER

MCSHANE, Judge:

On August 8, 2016, Plaintiffs, a group of female student-athletes bringing this action on behalf of themselves and a putative class of female athletes, moved for a temporary restraining order and preliminary injunction against Defendant Willamette University ("Willamette"). ECF No. 2. On August 17, 2016, Willamette responded to that motion and separately moved to strike various portions of declarations entered by Plaintiffs. ECF Nos. 14, 19.

Plaintiffs seek expedited discovery, an order enjoining Willamette from eliminating its women's rowing team, an order prohibiting Willamette from eliminating any other women's teams until equal opportunity for women in the context of student athletics has been achieved at Willamette, and an order prohibiting Willamette from retaliating against Plaintiffs. Because the women's rowing team has already been disbanded and the facts surrounding Willamette's

Page 1 – OPINION AND ORDER

continued ability to support the rowing team under the third prong of Title IX's effective

accommodation test do not clearly favor Plaintiffs, the motion is DENIED in part.

## BACKGROUND

On May 31, 2016, Willamette announced the immediate termination of its women's

rowing team, citing changing river conditions on the Willamette River, limited resources, and

significant costs associated with the team. ECF No. 2-1, at 3. In that announcement, Willamette's

Director of Athletics, Valerie Cleary acknowledged that Title IX obligations "compel

[Willamette] to add new options." *Id.* The Director Athletics then described her plans to

immediately search for alternative athletic opportunities for women. *Id.*

While Willamette does not offer athletic scholarships, ECF No. 17 at ¶ 11, at least one

Plaintiff was recruited to row at the school, and others chose Willamette or chose to continue

attending Willamette because of its rowing team. *See* ECF No. 7, at ¶ 4; ECF Nos. 2–4. Plaintiffs

variously describe the current and prospective benefits they enjoy from rowing at Willamette,

which range from lessons in self-discipline, to academic benefits, to rigorous improvements in

physical health and fitness associated with participation in intercollegiate sports. They now "face

the immediate, time-limited, and difficult question of deciding whether to remain at Willamette

without the opportunity to participate on the team that they have become committed to at

Willamette, or to seek transfers to other colleges or universities where they can continue to

participate in their sports." Pls.' Mot., 5, ECF No. 2. For these reasons, Plaintiff's seek

immediate reinstatement of the women's rowing program to ensure continuity of their

competitive team, membership therein, and coaching. *Id.* at 6.

In defense of its decision to dismantle the rowing team, Willamette points to the fact that

the Willamette River's currents flow directly into the 20-year old Willamette University

Page 2 – OPINION AND ORDER

boathouse, ECF No. 15 at ¶ 3, rendering the rowing team unable to safely row in or out of the boathouse. Because of this, the lease on the boathouse expired at the end of the 2015–16 and was not renewed. *Id.* As evidence of its dedication to explore options to maintain the rowing team, Willamette points to an engineering study it conducted in 2010 to "determine whether dredging the river might be a solution to change the river currents and permit ongoing use of the boathouse." Def.'s Resp., 1, ECF No. 14 (citing Decl. of Bauer, ¶ 4, ECF No. 15). Willamette's Vice President for Campus Planning states that the study informed Willamette that the source of the problem was deposits of upstream sediment that changed the current of the river, requiring the boathouse to withstand the full energy of the river at high flows. Decl. of Bauer, ¶ 4, ECF No. 15. The costs associated with engineering solutions, if permitted, ranged to over $300,000 and would have a range of environmental impacts on the river. *Id.*

Willamette also looked to several alternative boathouse locations, the closest of which was one owned by a businessman and used by the Salem Yacht & Boat Club. *Id.* at ¶ 6. Willamette looked into storage and site usage for the rowing team's boat shells, but determined that the terms and conditions imposed by the owner for a lease were not agreeable as Willamette would have to pay for infrastructural development and improvements for only a limited term usage period. *Id* at ¶¶ 6 –7. During the negotiation process, the Boat Club allowed the rowing team to row from the site for a fee paid by Willamette. *Id.* at ¶ 6.

Willamette also looked into another location in Independence, Oregon, that is licensed and leased, but not used, by Western Oregon University, and located 13 miles from Willamette. Decl. of Bauer, ¶ 4, ECF No. 9–10. After consideration, Willamette determined that the site had too many disqualifying traits: it "had few improvements, it offered extremely limited availability

for practice time during the fall and winter, transportation and transport were added risks, especially during the travel periods." *Id.* at ¶ 9.

Following all of these considerations, Willamette's administration collectively decided to discontinue the rowing program as of May 31, 2016, at the end of the 2015–16 academic year. Decl. of Cleary ¶ 9, ECF No. 16. Plaintiffs brought this action and motion on August 8, 2016.

**STANDARD**

A party seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish such harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are similar to those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Ca. 1995). The court's decision on a motion for a preliminary injunction is not a ruling on the merits. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

**DISCUSSION**

Despite Plaintiffs' assertions to the contrary, ECF No. 2 at 2, this is a motion not to preserve the status quo but to obtain mandatory relief from this court. As Plaintiffs recognize, a ruling in their favor would require an order from this Court mandating Willamette to reinstate the women's already-disbanded rowing program, which was terminated as of the announcement by Valerie Cleary dated May 2016. ECF No. 2-1, at 3. At oral argument, it was revealed that the rowing coaches are no longer employed by Willamette, and that only one coach, the head coach,

Page 4 – OPINION AND ORDER

remains willing and able to return to her prior position. Beyond that, the now-decommissioned

Willamette boathouse is no longer owned by Willamette, nor is the land on which it sits. The

boathouse has accordingly been decommissioned by Willamette. Moreover, despite Plaintiffs'

arguments, Willamette's administration appears to have made a good faith effort over a number

of years to find and commission a replacement boathouse off-campus. After what appear to be

careful considerations, Willamette decided against using an offsite boathouse for reasons that I

decline to overturn here.

On the facts presented, this is a motion for a "mandatory preliminary injunction,"[1] which

is "particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A district court should deny relief

of this sort "unless the facts and law clearly favor the moving party." *Id.* Nonetheless, a number

of district courts across the nation have ordered immediate reinstatement of disbanded teams

under a theory similar to that under which Plaintiffs bring the instant motion. I therefore look to

the requirements for preliminary injunctions and temporary restraining orders articulated in

*Winter v. NRDC*, 129 S. Ct. at 374, under the strict constraints for mandatory preliminary

injunctions described in *Stanley v. USC*, 13 F.3d at 1320.

Ruling only on the temporary restraining order, I must first determine whether Plaintiffs

have shown a likelihood of success on the merits, which is a threshold inquiry. *Ass'n des*

*Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013). Title IX

prohibits discrimination on the basis of sex by educational institutions, like Willamette, that

receive federal financial assistance. In particular, Title IX provides that: "No person in the

United States shall, on the basis of sex, be excluded from participation in, be denied the benefits

---

[1] A motion to preserve the status quo is a prohibitory preliminary injunction.

of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a)(2000). As relevant here, Title IX requires equity in accommodation of athletic interests, 34 C.F.R. § 106.37(c), which has two components: effective accommodation and equal treatment. *Monsourian v. Regents of Univ. of California*, 602 F.3d 957, 964 (9th Cir. 2010). At issue here is effective accommodation. As guided by Policy Interpretations published by the Department of Education's Office of Civil Rights, effective accommodation can be determined using a three-part test: (1) a showing of substantial proportionality—a proportionate number of women in intercollegiate athletics to those enrolled at the university in question; (2) a showing that the university has a "history and continuing practice of program expansion" for the underrepresented gender; *or* (3) where these cannot be shown, a showing that the university nonetheless fully and effectively accommodates the interests of women. *Id.* at 965 (citing 44 Fed. Reg. 71,418 (Dec. 11, 1979).

Plaintiffs devote a significant portion of their arguments in support of the instant motion to highlight the disproportionate athletic opportunities at Willamette. There is no dispute that Willamette does not meet the first of prong of the effective accommodation test.

Willamette points to several factors to support its contention that it satisfies the test's second prong. Willamette argues that it affirmatively disbanded its men's rowing team a number of years ago to focus available resources on women's rowing and to hire a full-time women's rowing coach. Def.'s Resp., 18–19, ECF No. 14 (citing Decl. of Rigsby, ¶ 6, ECF No. 18). Willamette also points to its promotion of its "Senior Woman Administrator" to "Associate Director of Athletics"; its applications for NCAA women and minority fellowships for women's volleyball and basketball; and sponsorship of a professional networking group of Willamette's female coaches and staff. *Id.* at 19.

Plaintiffs point to the fact that Willamette has not added a new women's team for two decades. Whether a school has added new sports or teams or not does not bear on this prong. *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 854 (9th Cir. 2014). The question is, instead, whether an athletic program was responsive to developing interests and abilities of female students. *Id.* Willamette's pivot from offering men's and women's rowing to focusing funding and resources on women's rowing appears to favors Willamette on this prong of the effective accommodation test. However, at oral argument on the motion for temporary restraining order, the parties agreed that women's opportunities on the rowing team have in fact lessened over time, contrary to slight increases in opportunities in recent history. On this record, Plaintiffs have met their burden to show that Willamette is not in compliance with the second prong of the effective accommodation test.

Nonetheless, the effective accommodation test is disjunctive, and the third prong, which is more qualitative than the preceding two, looks to whether there is unmet interest in a particular sport; whether the school has the ability to support a team in that sport; and whether there is an expectation of competition for the team. *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843 at 858 (citing 44 Fed. Reg. at 71,418). The Ninth Circuit has held that, as here, where an institution has recently eliminated a team, the interest, ability, and competition aspects of the third prong are presumed. *Id.* Importantly, this presumption attaches absent strong evidence that conditions have changed. *Id.* Given the evidence presented showing changes to the Willamette River's currents, the resulting changes to safety conditions surrounding Willamette's boathouse, Willamette's attempts to assess and address the engineering dilemma with the Willamette River, and Willamette's alleged inability to find a suitable replacement boathouse after some efforts, I find that Willamette has introduced sufficient evidence at this stage that conditions have changed

Page 7 – OPINION AND ORDER

to rebut the presumption of Willamette's ability to sustain the women's rowing team. Further, under the standard guiding my analysis on a motion for an affirmative injunction or temporary restraining order, I find that Plaintiffs have not met their burden to show that "the law and facts clearly favor" their position. *See Garcia*, 13 F.3d at 1320. On balance, at this stage, Plaintiffs have failed to demonstrate a likelihood of success on the merits under the third prong of the effective accommodation test.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2) is DENIED in part as to the requested temporary restraining order. This ruling does not reach Plaintiffs' motion for preliminary injunction, as more facts are necessary to determine whether Willamette is in fact able to find suitable alternative facilities to support the women's rowing team under the third prong of the effective accommodation test.

The parties are ORDERED to conduct expedited discovery as to whether Willamette's efforts to secure alternative facilities, particularly with respect to the Salem Yacht and Boat Club and the Independence boathouse, were truly exhaustive. The court would welcome testimony from the decision-makers at the proposed alternative facilities as to the viability of housing Willamette's rowing team.

IT IS SO ORDERED.

Dated this 24 day of August, 2016.

Michael J. McShane
United States District Judge